08 CV 7892 (PGG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIELLE HERBERT,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY BOARD OF
EDUCATION, NEW YORK CITY DEPARTMENT OF
EDUCATION, and SHANIQUIA L. SINGLETARY-DIXON,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-169
New York, NY 10007

*Of Counsel:* Maxwell D. Leighton
*Tel:* (212) 788-0407

Law Dep't No. 2008-034147

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

      POINT I ............................................................................................................................ 2

          PLAINTIFF CANNOT PROVE A *PRIMA FACIE*
          CASE OF GENDER OR PREGNANCY
          DISCRIMINATION. ................................................................................... 2

          A.   The Summary Judgment Standard........................................................ 2

          B.   Plaintiff Fails to Establish a Prima Facie Case
              of Gender or Pregnancy Discrimination. .............................................. 3

          C.   Defendants Have Articulated a Legitimate,
              Non-Discriminatory Reason for Their Actions
              and Plaintiff Cannot Show That These Reasons
              are False or Pretextual. ...................................................................... 5

      POINT II ......................................................................................................................... 10

          PLAINTIFF'S RETALIATION CLAIMS SHOULD
          BE DISMISSED ...................................................................................... 10

          D.   The Court Should Not Exercise Supplemental
              Jurisdiction Over Plaintiff's Retaliation Claims................................. 10

          E.   Plaintiff Failed to File a Required Notice of
              Claim Regarding Her Termination from DOE .................................... 10

          F.   Plaintiff Fails to Establish a Claim of
              Retaliation Under Either New York Civil
              Service Law Section 75-b or New York
              Education Law Section 3028-d........................................................... 11

CONCLUSION............................................................................................................................ 17

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

<u>Bickerstaff v. Vassar College</u>,
    196 F.3d 435 (2d Cir. 1999) ...................................................................................2

<u>Celotex Corp. v. Catrett</u>,
    477 U.S. 317 (1986) ...........................................................................................2

<u>Donas v. City of New York</u>,
    62 A.D.3d 504, 878 N.Y.S.2d 360 (1st Dep't 2009)........................................11

<u>Fisher v. Vassar College</u>,
    114 F.3d 1332 (2d Cir. 1997) ...............................................................................7

<u>Gregory v. Daly</u>,
    243 F.3d 687 (2d Cir. 2001) .................................................................................4

<u>Kemp v. Metro-North R.R.</u>,
    316 Fed. App'x 25 (2d Cir. 2009). ......................................................................3

<u>McDonnell Douglas Corp. v. Green</u>,
    411 U.S. 792 (1993) ............................................................................................3

<u>Oberson v. City of New York</u>,
    232 A.D.2d 172, 648 N.Y.S.2d 13 (1st Dep't 1996)........................................13

<u>Schnabel v. Abramson</u>,
    232 F.3d 83 (2d Cir. 2000) ..................................................................................3

<u>St. Mary's Honor Ctr. v. Hicks</u>,
    509 U.S. 502 (1993) ............................................................................................3

<u>Suarez v. New York City Dep't of Probation</u>,
    268 A.D.2d 203, 700 N.Y.S.2d 682 (1st  Dep't 2000)......................................13

<u>Valentine v. Standard & Poor's</u>,
    50 F. Supp. 2d 262 (S.D.N.Y. 1999) ...................................................................4

<u>Viola v. Philips Medical Systems</u>,
    42 F.3d 712 (2d Cir. 1994). ..................................................................................3

<u>Wright v. Coughlin</u>,
    132 F.3d 133 (2d Cir. 1998). ................................................................................2

## PRELIMINARY STATEMENT

Plaintiff brings this action alleging discrimination based on gender and pregnancy, under Title VII of the Civil Rights Act of 1964 and the New York State and City Human Rights Laws, Executive Law Section 296 and Section 8-502 of the Administrative Code of the City of New York, respectively.  Plaintiff further alleges retaliation, pursuant to New York Civil Service Law Section 75 and New York Education Law Section 3028-d, based on plaintiff's "whistleblower" complaint against Shaniquia Singletary-Dixon, defendant herein and the principal of plaintiff's former school, Public School 149.

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the complaint on the grounds that: (1) plaintiff fails to allege a *prima facie* case of discrimination based on gender or pregnancy under Title VII or New York State and City Human Rights Laws because she cannot established that she satisfactorily performed her duties as an assistant principal with the Department of Education; (2) defendants have articulated legitimate non-discriminatory reasons for their employment-related decisions with respect to plaintiff; (3) plaintiff cannot show that defendants' reasons for their actions were pretextual or that the real reasons were discriminatory; (4) the Court lacks supplemental jurisdiction over plaintiff's claims of retaliation brought only under state law; (5) plaintiff failed to file a required notice of claim regarding her termination from the New York City Department of Education ("DOE"); and (6) plaintiff fails to establish a claim of retaliation under either New York Civil Service Law Section 75-b or New York Education Law Section 3028-d.

## STATEMENT OF FACTS

The Court is respectfully referred to defendants' Statement of Undisputed Facts Under Local Civil Rule 56.1, dated August 10, 2009 ("56.1 Statement"), the Declaration of

Maxwell Leighton, dated August 10, 2009 ("Leighton Decl."), the Declaration of Shaniquia

Dixon, dated August 10, 2009, and the supporting evidence cited to therein for a statement of

pertinent and material facts.

## ARGUMENT

### POINT I

**PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF GENDER OR PREGNANCY DISCRIMINATION.**

A.    **The Summary Judgment Standard.**

A motion for summary judgment must be granted when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant is not, however, required to

present evidence negating the element of the other party's case and can simply point to an

absence of evidence on an issue on which the non-movant bears the burden of proof.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Although the moving party bears the initial

burden of going forward to show that there is no genuine issue of material fact, once that burden

has been met, the non-moving party cannot rely on conclusory allegations or speculation.

Rather, the non-moving party must set forth specific facts indicating that a genuine issue of fact

exists to defeat the motion for summary judgment.  See Wright v. Coughlin, 132 F.3d 133, 137

(2d Cir. 1998).  "Statements that are devoid of any specifics, but replete with conclusions, are

insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar

College, 196 F.3d 435, 452 (2d Cir. 1999).

In a discrimination case, plaintiff bears the burden of proving that the adverse

employment action was caused by intentional discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).  This is generally done indirectly, through the familiar burden shifting process set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1993). Initially, plaintiff must meet the minimal burden of showing a *prima facie* case.  Thereafter, the employer has the burden of producing a legitimate non-discriminatory reason for the adverse employment action. Finally, the burden of production returns to plaintiff to show that the proffered reason is actually pretext, masking discrimination.  Id.  The burden of production shifts from plaintiff to defendant and back to plaintiff but the burden of persuasion remains with plaintiff throughout.  See St. Mary's Honor Ctr., 509 U.S. at 506-10.

**B.     Plaintiff Fails to Establish a Prima Facie Case of Gender or Pregnancy Discrimination.**

To establish a *prima facie* case under McDonnell Douglas Corp., 411 U.S. at 802-804, plaintiff must demonstrate: (1) membership in a protected class, (2) satisfactory performance of job duties, (3) that an adverse action was taken, and (4) that the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination.  Indeed, the "ultimate issue" is whether plaintiff meets the burden of proving that an "impermissible reason," such as unlawful discrimination, was the real reason for the adverse action and that defendants intentionally discriminated against plaintiff.[1]  Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Viola v. Philips Medical Systems, 42 F.3d 712, 717 (2d Cir. 1994).   Here, plaintiff

---

[1] Employment discrimination claims brought under the New York State and City Human Rights Laws are analyzed under the burden-shifting framework of Title VII claims.  See Kemp v. Metro-North R.R., 316 Fed. App'x 25, 26 (2d Cir. 2009).

cannot establish a *prima facie* case because she fails to show that she satisfactorily performed her duties as an assistant principal at Public School 149.

Prior to the discontinuance of plaintiff's probationary service as an assistant principal, she was cited for extremely improper behavior during several incidents amply demonstrating plaintiff's inability to perform her position satisfactorily.   See Exhibits "D" through "N," annexed to the Declaration of Shaniquia Dixon, dated August 10, 2009 ("Dixon Decl.").   Indeed, during plaintiff's probationary period, utilized precisely to assess whether she could competently do her job, the letters and memoranda from her principal, Shaniquia Dixon ("Principal Dixon") describe repeatedly poor performance, including failing to properly supervise the teachers in plaintiff's department; making inappropriate statements separately to a student, to a staff member, and to a parent; and disregarding the explicit directives of the principal.   Id.   Such conduct, well below the standards reasonably expected of an assistant principal, entirely vitiates plaintiff's *prima facie* case.   See Gregory v. Daly, 243 F.3d 687, 697 n.7 (2d Cir. 2001) ("Of course, there will also be circumstances in which a plaintiff's performance is so manifestly poor as to render her unqualified for continued employment and thereby defeat her *prima facie* case.").

Plaintiff's subjective disagreement with Principal Dixon's critiques of her performance does not present a basis for her discrimination claim.   See Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) (deeming "plaintiff's subjective disagreement with his reviews [as] not a viable basis for a discrimination claim.") (aff'd, 205 F.3d 1327 (2d Cir. 2000).   Furthermore, the incidents upon which Principal Dixon based her review of plaintiff's poor performance were reported to Principal Dixon by parents of the school's

students, by a fellow principal, and by a staff member.  See Exhibits "H," "Q," "R," "S," "T,"

and "U," annexed to the Dixon Decl.

Plaintiff cannot refute this evidence and, accordingly, is unable to establish a

*prima facie* case of gender or pregnancy discrimination.

## C. Defendants Have Articulated a Legitimate, Non-Discriminatory Reason for Their Actions and Plaintiff Cannot Show That These Reasons are False or Pretextual.

Even assuming that plaintiff has established a *prima facie* case, defendants have

provided a legitimate, non-discriminatory reason for the decision to discontinue plaintiff's

probationary employment in February 2008.  As set forth above, in the estimation of Principal

Dixon, plaintiff performed poorly as an assistant principal.  Almost all of the incidents involving

plaintiff, in which her conduct was deemed unprofessional, were reported by other individuals

directly to Principal Dixon.  See Exhibits "H," "Q," "R," "S," "T," and "U," annexed to the

Dixon Decl.  Furthermore, following plaintiff's discontinuance, the DOE's Chancellor's

Committee, having reviewed the recommendation to discontinue plaintiff's probationary

position, unanimously concurred with such recommendation, finding that the "file documents

and testimonies of all parties support the recommendation [and that] plaintiff admitted that she

made inappropriate remarks to students, parents and staff."  See Exhibit "X," annexed to the

Leighton Decl.

Specifically, as described in Defendants' 56.1 Statement, plaintiff received

disciplinary letters, leading to her discontinuance, for the following:

(1)  Telling a special education student that Principal Dixon "did him a favor" by
     allowing him to be in the school, a statement so upsetting this student that his
     mother made a complaint against plaintiff.  See Exhibit "H," annexed to the

Dixon Decl.  Plaintiff admitted that she made such a statement.  <u>See</u> <u>id</u>.  <u>See</u> <u>also</u> Pl. Tr. at 81:16-24.

(2)   Making grossly inappropriate statements in a conversation with a parent, the Vice-President of the school's Parent-Teacher Association.  <u>See</u> Exhibit "I," annexed to the Dixon Decl.  That parent contacted Principal Dixon following plaintiff's crass statements to her and apparently discussed the incident with fellow parents and PTA members, as followed with letters to Principal Dixon from the parent and others, questioning plaintiff's behavior at the school. <u>See</u> Exhibits "Q," "R," and "S," annexed to the Dixon Decl.

(3)   Yelling in front of students and staff, as observed by another assistant principal, that the school's nurse had been rude to plaintiff, and calling the nurse "worthless."  <u>See</u> Exhibit "K," annexed to the Dixon Decl.  Plaintiff admitted to calling the nurse "worthless."  <u>Id</u>.

(4)   Allowing a suspended school employee to enter and remain in the main office, where she was forbidden, and where she conversed with plaintiff for an extended period of time.  <u>See</u> Exhibit "L," annexed to the Dixon Decl.

(5)   Failing to address a potentially dangerous situation, a verbal altercation occurring within the school, as it began directly in front of plaintiff.  <u>See</u> Exhibit "M," annexed to the Dixon Decl.  The school employee involved in the altercation later wrote to Principal Dixon, expressing her concern that plaintiff, though witnessing the conflict, took no action.  <u>See</u> Exhibit "U," annexed to the Dixon Decl.

Plaintiff bears the burden to show that defendants' proffered reasons for her discontinuance from probationary services are pretext. Plaintiff must provide this Court with evidence that (a) defendant's legitimate reasons are false *and* (b) that the allegedly false reasons are being used as pretext to mask discrimination. See Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998).

Plaintiff alleges that either discrimination based on plaintiff's pregnancy or retaliation for plaintiff's "whistleblower" complaint truly motivated Principal Dixon's actions. Plaintiff establishes neither claim sufficiently to meet her burden. With respect to plaintiff's pregnancy claim, plaintiff alleges that various employees of the school told her that Principal Dixon had a problem with pregnant employees and wanted plaintiff out of the school. See Compl. at ¶ 29. Yet, apart from these secondhand statements, unreliable and unsupported, plaintiff did not testify to or provide evidence of any statements made or overt actions taken by Principal Dixon reflecting any such animus. As to Principal Dixon, plaintiff alleges and testified only that in November 2007, Principal Dixon requested they take a walk outside the school, in the early morning before work, during which Principal Dixon asked, and plaintiff disclosed, the identity of the father of plaintiff's then-unborn child. See Pl. Tr. at 78:15 – 79:24. Plaintiff further testified that after informing Principal Dixon of the father's identity during this walk, Principal Dixon did not thereafter ever inquire again. Id. at 80:5-24.

With respect to her claim of retaliation, plaintiff alleges that while standing next to Principal Dixon at the school, plaintiff overheard a phone conversation that the school's Business Manager was having, allegedly discussing Principal Dixon's purported

misappropriation of funds.  Based on Principal Dixon standing next to her, plaintiff supposes that Principal Dixon likewise overheard this phone conversation, and based only on this, speculates that Principal Dixon allegedly knew that plaintiff had knowledge of purported wrongdoings.  See Compl. at ¶ 33.  Yet, at her deposition, plaintiff testified that she did not know for certain that Principal Dixon had overheard this phone conversation and, further, plaintiff testified that she did not ever discuss with Principal Dixon the phone conversation that plaintiff allegedly overheard.  See Pl. Tr. at 96:9-17.  Moreover, at her deposition, plaintiff testified that she wrote an anonymous letter to SCI, alleging that Principal Dixon lacked integrity, was dishonest, had stolen school funds, and that she had created an "environment of terror."  Id. at 98:20 – 101:1. Plaintiff testified that she had written the letter anonymously to protect herself from retribution, making it sound like it was from a teacher, not from plaintiff, and referring to herself in the third person as "that one . . . brought with her from 149," as someone having information about the allegations.  Id. at 99:12-14, 101:2 – 102:16.  Thus, plaintiff cannot establish that Principal Dixon, in fact, had any knowledge whatsoever that plaintiff had filed any complaint against her prior to recommending plaintiff's discontinuance.  Indeed, at her deposition, Principal Dixon testified that only in April 2008, two months after plaintiff was discontinued, did she learn from SCI that plaintiff had filed the complaint.  See Dixon Tr. at 38:10 – 40:8.

Finally, plaintiff cannot establish that the legitimate, nondiscriminatory reasons for recommending plaintiff's discontinuance were false.  As plainly set forth in the record, all of the disciplinary letters to plaintiff's file resulted from incidents and events involving parents, administrators, and staff.  Following nearly all of these incidents, Principal Dixon was informed of plaintiff's unprofessional behavior by those other individuals, who had witnessed firsthand

8

plaintiff's improper conduct.  For example, as annexed to the Dixon Declaration, several parents and PTA Board Members communicated in writing to Principal Dixon their grave concerns regarding plaintiff's interaction with and profane speech directed at a parent, as well as their suspicion that plaintiff was engaging in an affair with a school custodian in front of students.  See Exhibits "Q," "R," and "S," annexed to the Dixon Decl.  Principal Dixon herself, obligated thereafter to file a complaint with SCI and investigate, reported to SCI that she had not seen any "unprofessional behavior or misconduct between plaintiff and [the school custodian]" and thus could not substantiate the concerns of the parents.  See Exhibit "O," annexed to the Dixon Decl.

As well, plaintiff's interaction with the school nurse, calling her "rude" and "worthless," was reported to Principal Dixon by Barry Daub, Principal of Public School 811, a school with which Public School 149 shared a building.  See Exhibit "T," annexed to the Dixon Decl.  Additionally, plaintiff's failure to intercede during a heated verbal confrontation within the school, despite it occurring directly in front of her, was reported to Principal Dixon by the school staff member involved in the confrontation, who expressed her concern that plaintiff had not acted immediately to defuse the argument.  See Exhibit "U," annexed to the Dixon Decl.  Thus, as the factual predicates for plaintiff's discontinuance directly arose from multiple complaints made to Principal Dixon, and were not manufactured or amplified by Principal Dixon in disciplining plaintiff, plaintiff fails to show that the legitimate, non-discriminatory reasons for her discontinuance were false and, therefore, cannot establish that such reasons were pretextual.

Accordingly, for the foregoing reasons, plaintiff's claims of discrimination based on gender and pregnancy under Title VII and New York State and City Human Rights Laws should be dismissed.

## POINT II

## PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED

Plaintiff alleges that Principal Dixon retaliated against her based on plaintiff's "whistleblower" complaint, asserting that such retaliation was in violation of New York Civil Service Law § 75-b and New York Education Law § 3028-d. For the following reasons, this claim should be dismissed.

**D.     The Court Should Not Exercise Supplemental Jurisdiction Over Plaintiff's Retaliation Claims**

Pursuant to 28 U.S.C. § 1367, this Court holds supplemental jurisdiction over state law claims that are "so related to claims within the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiff has not alleged any federal claim of retaliation, but rather alleges that her discontinuance and termination resulted from a "whistleblower" complaint in violation of New York Civil Service Law § 75-b and New York Education Law § 3028-d. Thus, because such claims are not "so related" to any claim within this federal action, the Court should decline to exercise supplemental jurisdiction. Furthermore, there is a paucity of reported case law dealing with New York Education Law § 3028-d. Accordingly, because plaintiff's claim as to such statute "raises a novel or complex issue of State law," this Court should decline to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(1).

**E.     Plaintiff Failed to File a Required Notice of Claim Regarding Her Termination from DOE**

In order to advance a claim of retaliation under Civil Service Law § 75-b, plaintiff was required to file a notice of claim, pursuant to General Municipal Law § 50-e(1)(a).  See Donas v. City of New York, 62 A.D.3d 504, 878 N.Y.S.2d 360 (1st Dep't 2009).  Although plaintiff filed a notice of claim regarding her discontinuance as an assistant principal, she did not do so with respect to her termination from DOE.  Accordingly, plaintiff's claim of retaliation pursuant to Civil Service Law § 75-b, insofar as it is directed at plaintiff's termination from DOE, should be dismissed.

**F.    Plaintiff Fails to Establish a Claim of Retaliation Under Either New York Civil Service Law Section 75-b or New York Education Law Section 3028-d**

Civil Service Law Section 75-b provides that:

> "A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation."

Civil Service Law § 75-b (2)(a).

Education Law Section 3028-d provides that:

> "Any employee of a school district, board of
> cooperative educational services, or charter school
> having reasonable cause to suspect that the fiscal
> practices or actions of an employee or officer of a
> school district, charter school, or board of
> cooperative educational services, violate any local,
> state, federal law or rule and regulation, relating to
> the financial practices of such entity and who in
> good faith reports such information to an official of
> such school district, board of cooperative
> educational services or charter school, or to the
> office of the state comptroller, the commissioner or
> to law enforcement authorities, shall have immunity
> from any civil liability that may arise from the
> making of such report, and no school district, or
> employee or officer thereof, charter school, or
> employee or officer thereof, or board of cooperative
> educational services, or employee or officer thereof,
> shall take, request, or cause a retaliatory action
> against any such employee who makes such report."

Education Law § 3028-d.

As described above, just as plaintiff fails to establish pretext for defendants' legitimate reasons for plaintiff's discontinuance, plaintiff likewise fails to establish that either Civil Service Law Section 75-b or Education Law § 3028-d were violated as a result of her "whistleblower" activities.

First, plaintiff cannot establish that Principal Dixon had any knowledge that plaintiff filed an SCI complaint against Principal Dixon prior to her discontinuance. Plaintiff's allegation that Principal Dixon overheard a supposed phone conversation, held by another person, while standing next to plaintiff, and that the telling topic of such alleged phone conversation purportedly would have led Principal Dixon to impute to plaintiff vague knowledge of financial misdeeds is purely and entirely speculative. Plaintiff testified that she did not ever discuss with Principal Dixon the allegations she claimed to have overheard. See Pl. Tr. at 96:9-

17.     Moreover, plaintiff filed her SCI complaint <u>anonymously</u>, and testified that she further hid her identity by characterizing the complaint's author as a teacher and referring within the complaint to herself in the third-person, cited therein as an individual possessing knowledge of the principal's alleged improprieties.     <u>See</u> Pl. Tr. at 99:12-14, 101:2 – 102:16. Accordingly, because the identity of the complainant was unknown to Principal Dixon at the time that she recommended plaintiff's discontinuance, plaintiff's retaliation claim fails.[2]

        Furthermore, the reasons for plaintiff's discontinuance arose not from Principal Dixon, but rather germinated from complaints made by other persons — parents, staff, and administrators – alerting Principal Dixon to plaintiff's severely improper conduct during various incidents.     <u>See</u> Exhibits "H," "Q," "R," "S," "T," and "U," annexed to the Dixon Decl. Plaintiff's claim of retaliation is thus hamstrung by the clear fact that Principal Dixon did not fabricate any allegation against plaintiff but, rather, after learning of these complaints and meeting with plaintiff and her union representative, Principal Dixon determined that plaintiff's unprofessional behavior, manifested in these various events over a substantial period of time, demonstrated plaintiff's inability to perform as an assistant principal.  <u>See</u> <u>Suarez v. New York City Dep't of Probation</u>, 268 A.D.2d 203, 700 N.Y.S.2d 682 (1st Dep't 2000) ("the record also confirms that plaintiff failed to establish that respondent terminated his employment as a probationary probation officer in bad faith, and not for poor performance.").  <u>See also</u> <u>Oberson v. City of New York</u>, 232 A.D.2d 172, 648 N.Y.S.2d 13 (1st Dep't 1996)

---

[2] As well, plaintiff's identity as the SCI complainant was entirely unknown to DOE, given that SCI is part of the New York City Department of Investigations, an entity independent from DOE, and whose investigations of DOE personnel are intended to remain confidential from DOE throughout.  <u>See</u> http://www.nyc.gov/html/doi/html/sci.html.

Finally, plaintiff contends that her termination from the DOE constituted retaliation for her "whistleblower" activity. This contention is unavailing and unsupported. Plaintiff testified that in February 2004, she obtained a general education license but that her status remained that she was teaching under a special education license because, plaintiff alleged, Principal Dixon had not appointed plaintiff under a general education license when bringing her to Public School 149. See Pl. Tr. at 26:4-18. Yet, contradicting that allegation, plaintiff also testified that she never notified Principal Dixon that plaintiff had received her general education license either before or while moving from Public School 161 to Public School 149. Id. at 28:7-12. Thereafter, plaintiff attained her administrator license, and was appointed by Principal Dixon for the 2005-2006 school year as a probationary assistant principal at Public School 149. See Compl. at ¶¶ 20 – 21.

Following her February 2008 discontinuance, in April 2008, plaintiff was advised by DOE that her New York State Teacher Certificate had expired and that plaintiff must act immediately to avoid termination and removal from payroll at the end of the 2007-2008 school year. See Exhibit "V," annexed to the Leighton Decl. Plaintiff testified that she took no action in response to this letter, believing it was an error. See Pl. Tr. at 31:8-13.

Thereafter, in May 2008, plaintiff received another letter from DOE, again advising her that plaintiff's New York State Teacher Certificate had expired and that plaintiff must act immediately to avoid termination and removal from payroll at the end of the 2007-2008 school year. See Exhibit "V," annexed to the Leighton Decl. Plaintiff testified that in response to this letter, in May or June 2008, she met with an unnamed DOE representative who advised her that plaintiff's special education license was going to expire imminently, that the Department

14

of Education had appointed plaintiff as a special education teacher, and that plaintiff needed to find a job under her general education license. Alternatively, plaintiff testified, she was told in May or June 2008, that the most recent principal for whom she had worked could fix the problem. See Pl. Tr. at 31:18 – 32:19.

By letter dated July 2008, plaintiff was advised that her DOE employment was terminated effective July 1, 2008, and further reminded that she had received prior notification regarding her lack of valid certification and that this matter had needed to be addressed before the close of the 2007-2008 school year. See Exhibit "V," annexed to the Leighton Decl. At her deposition, plaintiff testified that her attorney contacted Principal Dixon in writing, but did not recall when such correspondence occurred. Plaintiff testified that she herself never contacted Principal Dixon with respect to plaintiff's certification. See Pl. Tr. at 32:20 – 33:15.

Accordingly, while plaintiff seeks to link her termination from the DOE with her claims of retaliation and, more remotely, her claims of pregnancy discrimination, such an attempt is unsupported by the record herein. Plaintiff was discontinued due to her extremely poor performance as an assistant principal during her probationary period. The evidence of such poor performance originated in complaints from parents, staff, and administrators, directed to Principal Dixon. Principal Dixon's recommendation, that plaintiff be discontinued, was unanimously upheld by the Chancellor's Committee, before which plaintiff appeared and which, following her Review, rejected the same "whistleblower" contention plaintiff advances here. See Exhibit "X," annexed to the Leighton Decl. Plaintiff cannot establish pretext to abrogate defendants' legitimate, nondiscriminatory basis for their action, nor can she establish a claim that defendants retaliated against her for an anonymously made complaint to an outside agency.

Moreover, plaintiff's termination from DOE resulted from her failure to advise Principal Dixon of plaintiff's new license upon beginning at Public School 149 and, thereafter, from not contacting Principal Dixon prior to plaintiff's July 1, 2008 termination.  Therefore, based on the foregoing, plaintiff's claims should be dismissed.

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court issue an order granting their motion for summary judgment, dismissing the complaint in its entirety with prejudice, entering judgment for defendants, and granting defendants costs, fees, and disbursements together with such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
              August 10, 2009

                                 **MICHAEL A. CARDOZO**
                                 Corporation Counsel of the
                                  City of New York
                                 Attorney for Defendants
                                 100 Church Street, Room 2-169
                                 New York, New York 10007
                                 (212) 788-0407

By:                                                
                                      Maxwell D. Leighton
                                   Assistant Corporation Counsel

Blanche Greenfield
Maxwell D. Leighton
   Of Counsel